IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CLAY C. KEYS, #22458-017,<br>     Plaintiff, | §<br>§<br>§ |
| v. | §   Civil Action No.  3:17-CV-2940-N-BH |
| | § |
| UNITED STATES OF AMERICA, et al.,<br>     Defendants. | §<br>§   Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the case should be **DISMISSED** as frivolous and for failure to state a claim.

**I.  BACKGROUND**

Clay C. Keys (Plaintiff), an inmate in the federal Bureau of Prisons (BOP), sues Warden D.J. Harmon (Warden), Chief Dental Officer Dr. Perez (Chief Dentist), and Dental Officer Dr. Baker (Dentist), in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his civil rights under the Eighth Amendment to the Constitution. (docs. 3, 5, 12.)

Plaintiff alleges that when he arrived at the Federal Correctional Institute at Seagoville, Texas (FCI-Seagoville) in mid-April 2014, he had no upper teeth and seven severely decayed bottom teeth, and was in immediate need of dentures because he had difficulty eating foods without choking. (doc. 12 at 13, 22.)[2] He claims official BOP policy required all new inmates to receive a dental examination within 14 days of their arrival, but that he never received this examination. (*Id.* at 6.)  He submitted a sick-call request complaining of a decayed tooth, and he was examined by

---

[1]  By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page.

Chief Dentist, who extracted his tooth on August 8, 2014. (*Id.*) Around the same time, he submitted a request to be placed on the National Inmate Waiting List to receive dentures. (*Id.* at 5.)

On October 26, 2016, Plaintiff was examined by Chief Dentist, who told him that he might not be a candidate for successful dentures because of upper jaw misalignment. (*Id.* at 12.) Chief Dentist advised him that he was a better candidate for dental implants, and that he would submit a recommendation to the Regional Chief Dentist for dental implants. (*Id.*) He later prescribed him a mechanical diet because Plaintiff had difficulty chewing food. (doc. 12-1 at 58-59.) The following year, Plaintiff submitted a grievance complaining about his two-year wait for dental implants, and he was told that he was never placed on the waiting list. (doc. 12 at 5.) After appealing this grievance, he was told that he would be placed on the waiting list effective May 1, 2017. (*Id.* at 9.) Plaintiff then filed a Freedom of Information Act (FOIA) Request with the BOP about his waitlist status, but the BOP responded that it was unable to locate his name on the National Inmate Waiting List. (*Id.*)

On October 13, 2017, Plaintiff visited Dentist for pain from two of his decayed teeth, and she took over an hour to extract both teeth. (*Id.* at 21.) He allegedly had an allergic reaction to the pain medication seven days later. (*Id.*) Plaintiff claims he submitted multiple grievances to Warden between 2014 and 2017 complaining about his dental care, but he failed to remedy his complaints. (*Id.* at 4.) He also claims Chief Dentist ignored an email he sent complaining about "continual swallowing/choking issues" with his mechanical diet. (*Id.* at 19.)

Plaintiff claims his inadequate dental treatment violated his constitutional rights, and that Defendants acted with deliberate indifference because they failed to correct or remedy his dental problems. (*Id.* at 4, 17, 20.) He "suffered through pain, delays, infections, malnutrition, anxiety, the

2

inability to properly eat nutritious foods, facial disfigurement, drooling, bleeding, sensitivity issues, [and] mis-aligned jaws" as a result. (*Id.* at 19.) He seeks injunctive relief and monetary damages for his pain and suffering. (*Id.* at 26.) No process has been issued.

## II. PRELIMINARY SCREENING

Plaintiff is an inmate in the Federal prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. *BIVENS*

Plaintiff sues Defendants in their individual capacities under *Bivens*. In *Bivens*, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. *Bivens*, 403 U.S. 388. *Bivens* extends the

protections afforded under 42 U.S.C. § 1983 to parties injured by federal actors. *See Boyd v. Driver*, 579 F.3d 513, 515 n. 5 (5th Cir. 2009) (per curiam) (a *Bivens* action is otherwise coextensive with, and indistinguishable from a § 1983 claim); *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005) (per curiam).[3] The Fifth Circuit has recognized that a plaintiff may request "injunctive relief from violation of his federal constitutional rights." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Ramsey v. United States*, No. 3:96-CV-3358-G, 1997 WL 786252, at *2 n.2 (N.D. Tex. Dec. 11, 1997) (a plaintiff may seek injunctive or declaratory relief in addition to monetary relief in a *Bivens* action). Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, a plaintiff has no viable claim under *Bivens*. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing "[a] *Bivens* action is analogous to an action under § 1983- the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

## A.    **Dental Care Claims**

Plaintiff alleges that Defendants have shown deliberate indifference to his need for dental care. (doc. 12 at 4, 7, 20.)[4]

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "An inmate's right of access

---

[3] Unlike the multitude of claims that may be brought against state officials under 42 U.S.C. § 1983, however, "a *Bivens* remedy is not available for all constitutional violations." *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017); *see also Iqbal*, 556 U.S. at 675-76 ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.' ") (citations omitted).

[4] Plaintiff's answers to the magistrate judge's questionnaire constitute an amendment to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

to medical care includes the right to see a dentist when the conditions of his teeth or gums have a serious affect on his health and well being." *Avila v. Landgrebe*, No. CIV.A. H-12-2315, 2013 WL 1336586, at *5 (S.D. Tex. Mar. 29, 2013) (citing *Williams v. Mason*, 210 F. App'x 389, 390 (5th Cir. 2006)). To succeed on a claim for damages for inadequate medical care, a plaintiff must demonstrate that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Id.* A prison official is liable for "deliberate indifference" "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

There are two requirements an inmate must satisfy to establish a constitutional violation based on inadequate medical care. *Farmer*, 511 U.S. at 832. If a court finds that either component is not met, it need not address the other component. *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quotation omitted). This objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the second component, the plaintiff must establish that the defendant possessed a culpable state of mind. *Farmer*, 511 U.S. at 838 (citing *Wilson*, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health

5

or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The culpable state of mind requires more than negligence, but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (noting that the culpable state of mind "is an extremely high standard to meet") (citations and internal quotation marks omitted). " 'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).

### 1. *Warden*

Plaintiff sues Warden because he did not receive a timely initial dental examination, he has been forced to wait years for dentures or dental implants, and his complaints about his dental problems have been ignored or denied. (doc. 12 at 4.) He alleges that Warden failed to correct or remedy the constitutional violation regarding his inadequate dental care "after being informed of the violation through a grievance," and that Warden was "wholly responsible" for the prison's daily operations and was grossly negligent in failing to supervise his subordinates. (*Id.* at 4-5.) He also claims that Warden "operated under a cost saving 'de facto policy' of repeatedly denying inmates needed medical care to make it look like he was saving big institutional operating costs . . . [and] inmates suffered because of such a policy." (*Id.* at 11.)

A *Bivens* action must be premised upon the personal involvement of the named defendants. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter the officer"). Under *Bivens*, an individual cannot be held liable under

a theory of *respondeat superior*.[5] *Iqbal*, 556 U.S. at 676; *see Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998) (explaining there is no doctrine of *respondeat superior* in a *Bivens* action). Instead, a supervisory federal employee and/or official may be held liable only where he has personal involvement in the acts that caused the deprivation of a constitutional right or if he implements or enforces a policy that causally results in a deprivation of constitutional rights. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

Here, Plaintiff alleges no specific facts to indicate that Warden had any personal involvement in any acts violating Plaintiff's constitutional rights, or that he implemented a policy resulting in a constitutional injury to Plaintiff. He makes conclusory allegations but pleads no facts alleging that Warden knew about any alleged violations of Plaintiff's constitutional rights, that he had any personal involvement in his dental treatment, that he had any personal involvement in any decision regarding dentures or dental implants, or that he had any personal involvement with his placement on the National Inmate Waiting List. Although he claims he submitted grievances to Warden regarding his inadequate dental care and waitlist status, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability. *See Amir-Sharif v. Valdez*, No. 3-06-CV-2258-P, 2007 WL 1791266, at *2 (N.D. Tex. Jun. 6, 2007) (failure to take corrective action in response to a grievance does not rise to the level of personal involvement); *Anderson v. Pratt*, No. CIV.A.3:02CV455-L, 2002 WL 1159980, at *3 (N.D. Tex. May 29, 2002) (holding that a viable *Bivens* claim against a warden had not been alleged because denying an administrative

---

[5] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." RESPONDEAT SUPERIOR, *Black's Law Dictionary* (10th ed. 2014).

grievance does not rise to the level of personal involvement, especially where the grievance was filed after the events which allegedly violated the plaintiff's civil rights).[6]  Plaintiff's generalized allegations that Warden was operating the prison under a "cost saving policy" for personal financial gain likewise does not sufficiently plead that he implemented a policy that resulted in constitutional injury to Plaintiff. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (recognizing that supervisory liability exists without overt personal involvement if supervisory officials implement a deficient policy that is the moving force behind a constitutional violation); *see also Hitt v. McLane*, A-17-CV-289-SS, 2018 WL 773992, at *8-9 (W.D. Tex. Feb. 7, 2018) (holding prisoner had failed to establish claim for supervisory liability where he did not identify a policy or custom that violated his constitutional rights).  Plaintiff's allegations fail to suggest that Warden personally interfered with his access to adequate dental treatment or otherwise implemented any unconstitutional policies causing injury to Plaintiff.  Because his claims against Warden are based solely on his supervisory role, he fails to state a plausible claim against him.

    *2.    Chief Dentist*

Plaintiff alleges that Chief Dentist acted with deliberate indifference because he failed to properly treat and evaluate his severe dental problems. (doc. 12 at 18-19.)  He claims that when he arrived at the prison on April 17, 2014, it was "obvious" that he had an immediate need for dentures because he did not have any upper teeth, had only a few bottom teeth remaining, and had difficulty chewing and eating without choking, and that he was a "perfect candidate" for dentures.  (*Id.* at 24-

---

[6] To the extent that these allegations are intended to state a separate basis for individual liability against Warden, the Fifth Circuit has held that inmates do not have a constitutionally protected interest in having grievances resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam); *see also Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. Oct. 24, 2007) (per curiam) (holding that plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

25.) When Chief Dentist examined Plaintiff on October 26, 2016, however, he was advised that dentures were not viable due to jaw misalignment. (*Id.* at 12.) He claims that his jaw was not misaligned or uneven when he arrived at FCI-Seagoville. (*Id.*) He also contends that Chief Dentist ignored his email "seeking his help regarding continual swallowing/choking issues with the current mechanical diet." (*Id.* at 19.)

Plaintiff acknowledges that Chief Dentist examined him on August 8, 2014 for a decayed tooth, and that he continued to receive dental care when he submitted sick-call requests. (*Id.* at 6, 22.) He also acknowledges that Chief Dentist submitted a report to the Regional Chief Dentist recommending dental implants for Plaintiff. (*Id.* at 12.) Plaintiff's documents reflect that Chief Dentist had prescribed him a mechanical diet, and that the Regional Chief Dentist ultimately determines whether inmates should receive dentures or dental implants. (doc. 12-1 at 58-59, 81-82.)

Plaintiff complains about the type of medical treatment he received, as well as a delay in medical treatment. Mere disagreement with the level and type of medical treatment is insufficient to state a claim, however. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Failed treatment also does not constitute deliberate indifference to medical care. *Domino*, 239 F.3d at 755. A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle*, 429 U.S. at 107; *Domino*, 239 F.3d at 756. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff claims he suffered substantial harm because he was "the perfect candidate" for dentures in 2014, but dentures were no longer viable because his dental condition had deteriorated.

(doc. 12 at 24.) A delay in medical care is a constitutional violation only if there has been deliberate indifference that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Fifth Circuit has recognized circumstances where a delay in necessary dental treatment does not constitute deliberate indifference to a serious medical need if an inmate receives in the interim period continuous dental evaluation and treatment for his condition, and if there is no evidence that the delay caused future complications. *See Eugene v. Deville*, 791 F. App'x 484, 485 (5th Cir. 2020) (holding that "prison officials act reasonably when they provide extensive dental treatment or soft food diets in lieu of dentures") (collecting cases); *see also Perkins v. Texas Dep't of Criminal Justice-Corr. Institutional Div.*, 514 F. App'x 488, 489 (5th Cir. 2013) (finding no claim for deliberate indifference where an inmate waited six years after his teeth were pulled to receive dentures). Plaintiff acknowledges that he continued to receive dental treatment after submitting sick-call requests, that Chief Dentist had prescribed him a mechanical diet, and that Chief Dentist had recommended him for dental implants. Further, Plaintiff does not allege that Chief Dentist was personally involved in him not receiving an initial dental screening, nor with his placement on the waiting list for dentures or dental implants. As reflected in his documents, the Regional Chief Dentist decides whether inmates should receive advanced dental treatment. (doc. 12-1 at 81-82.)

As for his claim that Chief Dentist ignored his email complaining about his mechanical diet, Plaintiff's own documents reflect that he disagreed with the food options a food manager offered in response his mechanical diet. (docs. 12 at 19; 12-1 at 95-96, 105.) As noted, an inmate's disagreement with the level and type of medical treatment is not deliberate indifference. *See Gibbs*, 254 F.3d at 549. Further, he does not allege that Chief Dentist had any control or authority over the food manager.

Plaintiff has failed to allege that Chief Dentist was deliberately indifferent. He does not state a constitutional violation because he does not allege that Chief Dentist refused to treat him, ignored his medical complaints, or intentionally treated him incorrectly. *See Eugene*, 791 F. App'x at 485; *Hay v. Thaler*, 470 F. App'x 411, 416 (5th Cir. 2012) (citing *Domino*, 239 F.3d at 756) (finding prisoner's allegations that he "should have been afforded emergency care for his complaint and that tooth number 13's dislodged filling should have been repaired more quickly" amounted to a disagreement with the substance of the dentist's professional evaluation, and failed to support a claim of deliberate indifference).

### 3. *Dentist*

Plaintiff sues Dentist for deliberate indifference in the treatment of his teeth. (doc. 12 at 20.) He claims that two of his bottom teeth were decayed and caused him pain, and that he went to Dentist to have them pulled out on October 13, 2017. (*Id.* at 21.) He contends that it took Dentist "over an hour" to extract both teeth, and that she needed to drill one of his teeth in half to remove each section individually. (*Id.*) Seven days later, Plaintiff had an allergic reaction to his pain medication, resulting in his uvula, tongue, and lips swelling up three times their normal size. (*Id.*) He was administered Predisone and Benadryl by hyperdermic needle, and the swelling went away two days later. (*Id.*) He alleges that a nurse wrote up a lengthy medical report, but it was never placed with his dental records. (*Id.*)

Plaintiff's allegations do not rise to the level of deliberate indifference. He does not allege that Dentist refused to treat him, ignored his medical complaints, or intentionally treated him incorrectly. *Johnson*, 759 F.2d at 1238. At most, he has alleged malpractice. Courts have recognized that a prison doctor can show deliberate indifference in his response to a prisoner's

11

needs, including prescribing penicillin knowing that the prisoner was allergic, and then refusing to treat the reaction. *See Estelle*, 429 U.S. 104-05 (citation omitted). Plaintiff does not make this allegation, however. There is no allegation that Dentist knew of Plaintiff's allergy and disregarded it, or that she had any involvement with his medical treatment after he was administered the pain medications. *See Green v. Ross*, 398 F. App'x 2, 4 (5th Cir. 2010) (holding that allegations that a nurse negligently and carelessly gave the plaintiff the wrong medication were properly dismissed where there was no allegation that the nurse intentionally treated him incorrectly or that he suffered any injury from the alleged mistreatment); *Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. Feb.7, 2007) (holding that a claim that a doctor gave the wrong medication for hemorrhoids is a claim of negligence or malpractice, and does not support a finding of deliberate indifference).

As for his claim that a medical report was not included with his dental records, a failure to maintain adequate medical records is not deliberate indifference. See *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) ("The 'deliberate indifference' standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s]."); *see also Stewart*, 174 F.3d at 535-56 (failure by a doctor to read notes made by nurses and learn of and treat an infection might constitute negligence, but is not deliberate indifference). Further, he has not alleged that Dentist had any personal involvement with the record omission, which is an essential element of a *Bivens* action. *See Ashcroft*, 556 U.S. at 678. Plaintiff has not alleged a cognizable cause of action against Dentist, and the claims against her should also be dismissed.

**B.     Other Claims**

Plaintiff alleges that Defendants violated BOP policies, and that Chief Dentist and Dentist

"repeatedly ignored procedures/regulations" and were "operating outside the scope of [their] official duties as [ ] Public Health Service (PHS) medical physician[s]." (doc. 12 at 4, 17-18, 20.) An alleged failure to follow prison rules and regulations does not give rise to a constitutional violation, however. *See Lewis v. Sec. of Pub. Safety & Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) (explaining that prison rules and regulations "do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right") (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)). Any *Bivens* claims based on alleged violations of BOP policies, procedures, or regulations are therefore without merit and should also be dismissed.

## IV.  RECOMMENDATION

Plaintiff's amended complaint should be **DISMISSED** with prejudice as frivolous and for failure to state a claim under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[7]

**SO RECOMMENDED** on this 20th day of April, 2020.



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE